No. 25-30228

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of Maison Royale, L.L.C.

Debtor

Rick M. Sutton,

Appellant

v.

Jack Adams,

Appellee

**Appeal from the United States District Court
for the Eastern District of Louisiana  Case No. 2:24-CV-1659**

**BRIEF OF APPELLANT RICK M. SUTTON**

Leo D. Congeni
Congeni Law Firm, L.L.C.
650 Poydras Street, Suite 2750
New Orleans, LA 70130
Telephone: (504) 522-4848
Facsimile:  (504) 910-3055
leo@congenilawfirm.com
           -and-
Robert G. Harvey, Sr.
600 North Carrollton Avenue
New Orleans, Louisiana 70119
Telephone: (504) 822-2136
Facsimile:  (504) 822-2179
rgharvey@bellsouth.net
***Attorneys for Appellant, Rick M. Sutton***

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5ᵗʰ CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Jack Adams | Stephanie Poucher of Phelps Dunbar, L.L.P. New Orleans, LA |
| Jack Adams | Patrick Judd of Phelps Dunbar, L.L.P. New Orleans, LA |
| Jack Adams | Patrick Shelby of Kelly Hart Pitre New Orleans, LA |

| Appellants: | Counsel for Appellants: |
|---|---|
| Rick Sutton | Robert Harvey New Orleans, LA |
| Rick Sutton | Leo Congeni of Congeni Law Firm, L.L.C. New Orleans, LA |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Wilbur J. "Bill" Babin, Jr., in his capacity as Ch. 7 Trustee for Maison Royale, LLC | Albert J. Derbes, IV of The Derbes Law Firm, LLC, New Orleans, LA |
| Wilbur J. "Bill" Babin, Jr., in his capacity as Ch. 7 Trustee for Maison Royale, LLC | Frederick L. Bunol of The Derbes Law Firm, LLC, New Orleans, LA |
| Maison Royale, LLC | Judy Y. Barrasso of Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, LA |
| Maison Royale, LLC | Mithun Kamath of Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, LA |

| Office of the United States Trustee | Amanda Burnette George, counsel for the Office of the U.S. Trustee, New Orleans, LA |
|---|---|

Dated:  September 8, 2025

By: /s/*Leo D. Congeni*

   Leo D. Congeni
   *Attorney of Record for Appellant*

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34, which provides that "[o]ral argument must be allowed in every case unless a panel of three judges who have examined the briefs and record unanimously agree that oral argument is not necessary," Rick M. Sutton respectfully submits that oral argument is warranted in this case. The Bankruptcy Court and District Court acknowledged the complexity of the issues and narrow grounds for their decisions, evidenced by, among other things, the Bankruptcy Court's comment that Mr. Adams' claim was "far from bullet proof", ROA 59, and the District Court's request for supplemental briefing. ROA 24266. Rick M. Sutton avers that oral argument will assist this Court in the adjudication of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS ........................................................................................ v

TABLE OF AUTHORITIES .................................................................................. 1

JURISDICTIONAL STATEMENT ....................................................................... 3

STATEMENT OF THE ISSUES ........................................................................... 3

STATEMENT OF THE CASE ............................................................................... 6

   A.    Procedural Background ............................................................................. 6

   B.    Factual Background ................................................................................ 10

SUMMARY OF THE ARGUMENT .................................................................... 14

ARGUMENT ....................................................................................................... 15

  A. Adams' Claim for Repayment of the Alleged Loan of $775,246  should have been Disallowed as Prescribed. ..................................................................... 15

        *i. ..... Adams' Loan for the Registry Deposit prescribed no later than June 9, 2020.* ............................................................................................................ 15

        *ii. ............. Adams failed to satisfy his burden of proving interruption prior to expiration of the prescriptive period.* ............................................................. 16

*iii.Adams failed to present any evidence to establish "acknowledgment" by Maison Royale, much less "clear, specific and positive" proof as the law requires*...........................................................................................18

*iv. .........The Bankruptcy Court's determinations that Maison Royale "was a party" to Adams' Ex Parte Motion to Release Funds and that Maison Royale decided "not to challenge the motion at any time" were wrong.*....................22

B. The Bankruptcy Court's conclusion that the appellate court's stay order prevented Adams from filing a collection action was clearly erroneous and contrary to the law...........................................................................25

C. Adams failed to satisfy his burden of proof as to the validity   of his loan claims.........................................................................................26

*i. The Court's finding that the Adams' transactions were loans, rather than equity contributions, was clearly erroneous.*....................................26

*ii.........................The uncontroverted evidence established that Adams vastly overstated the amounts he loaned or contributed to Maison Royale.*..............31

CONCLUSION .......................................................................36

CERTIFICATE OF SERVICE ..............................................38

CERTIFICATE OF COMPLIANCE ......................................39

# TABLE OF AUTHORITIES

**Cases**

*Sutton v. Adams and Maison Royale, LLC,* No. 2022-C-01673, 356 So.3d 1005 (La. 3/7/2023) ……………………………………………………footnotes 2 and 3

*Sutton, individually and derivatively on Behalf of Rjano Holdings, Inc. and Maison Royale, LLC v. Adams, Maison Royale, LLC and Rjano, Inc.*, No. 2022-C-01674, Nos. 2022-C-1672 & 2022-C-1677, 356 So.3d 1030, 1035-37 (La. 3/72023) …………………………………………………………………….footnotes 2 and 3

*Sutton, individually and derivatively on Behalf of Rjano Holdings, Inc. and Maison Royale, LLC v. Adams, Maison Royale, LLC and Rjano, Inc.*, No. 2022-C-01677, Nos. 2022-C-1674 & 2022-C-1672, 356 So.3d 1038, 1045-47 (La. 3/7/2023) ……………………………………………………footnotes 2 and 3

*Whitney Nat.'l Bank v. Demarest*, 947 F.2d 182 (5th Cir. 1991)…….……......17, 18

*Chauser v. Babin*, 412 So.2d 1005 (La. 1982)……………….……….…………..17

*Bahr v. Wood*, 507 So.2d 4 (La. App. 2d Cir. 1987)……………...…………......17

*Lake Providence Equip. Co. v. Tallulah Prod. Credit Ass'n*, 241 So.2d 506 (La. 1970)………………………………...……………………………………...…17

*Flowers v. U.S. Fidelity & Guar. Co.*, 381 So.2d 378 (La. 1979)……....……..……17

*Richard Guthrie & Assocs. v. Stone*, 562 So.2d 1071 (La. App. 4th Cir.), *writ denied*, 567 So.2d 107 (La.1990) ………………………………………………...17

*Autin v. Parish of LaFourche*, 423 So.2d 98, 100 (La. App. 1st Cir.1982)………17

*Emery v. Cabral*, 400 So.2d 340 (La.App. 4th Cir.), *writ denied*, 405 So.2d 533 (La.1981). …………………………………...……….……….…..……………17

*Landry v. Guidry*, 210 La. 194, 26 So.2d 695 (1946)……………………...……...17

*Gibson Greeting Cards, Inc. v. Cabibi*, 237 So.2d 897, 898 (La. App. 4th Cir. 1970) ………………………………………………………………………...17

*Gordon v. Gordon*, 16-0008, p. 5 (La. App. 4 Cir. 6/8/16), 195 So. 3d 687 …........22

*Lima v. Schmidt*, 595 So. 2d 624 (La. 1992)……………………….……………..22

*Ballanco v. Morvant*, 2023-0526, p. 8 (La.App. 4 Cir. 1/17/24); 382 So.3d 411 ..22

*Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, L.L.C.*, 12-1233, p. 6 (La. App. 4 Cir. 2/27/13) 111 So. 3d 10990……. …………………………….22

*Lee v. Champion Ins. Co.*, 591 So.2d 1364 (La. App. 4th Cir.1991)……………..25

*White v. Haydel*, 593 So.2d 421 (La. App. 1st Cir. 1991)………..………..25-26

*Liberty Mut. Ins. Co. v. Hera GmbH & Co. KG*, 07-21944-CIV, 2009 WL 10668608, (S.D. Fla. Nov. 30, 2009)….………………..…..……………………………35

*Franklin Life Ins. Co. v. Heitchew*, 146 F.2d 71 (5th Cir. 1945)………..…..…….35

## Statutes and Rules

28 U.S.C. § 158(a)(1)…………………...……………………….……...……...3

28 U.S.C. §§ 157 and 1334……………………..………………………………..3

La. C.C. Art. 3494(3)...………………………………………………....14, 15

11 U.S.C. § 502……………………………………….……..……...16, 17

La. C.C.P. Art. 615(3)…………………….…………………….…………….23

La. C.C.P. Art. 3462………………………….…………………….………...24

# JURISDICTIONAL STATEMENT

On June 18, 2024, the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court") entered the *Order* and *Memorandum Opinion* (the "Bankruptcy Court Order") denying, in part, and allowing, in part, Proof of Claim No. 4 filed by Jack Adams ("Appellee"). The Order constitutes a final order pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* of Bankruptcy Cases and Proceedings from the United States District Court for the Eastern District of Louisiana, dated April 22, 2021.

On June 27, 2024, Appellant timely appealed the Bankruptcy Court Order to the United States District Court for the Eastern District of Louisiana (the "District Court"), which had jurisdiction under 28 U.S.C. § 158(a)(1). On March 31, 2025, the District Court entered its *Order & Reasons* (the "District Court Reasons") and *Judgment* (the "District Court Judgment"), affirming the Bankruptcy Court Order.

On April 14, 2025, Rick M. Sutton ("Appellant) timely appealed to this Court, which has jurisdiction under 28 U.S.C. § 1291, which grants the Courts of Appeal jurisdiction over all final decisions of the District Courts of the United States.

# STATEMENT OF THE ISSUES

1. The lower courts erred in determining that the motion filed by Adams for release of the $775,246.00 held in the registry of the Civil District Court for the Parish of Orleans, State of Louisiana (referred to as the "Registry

Fund" or "Registry Deposit") interrupted prescription. To interrupt prescription, the "legal demand" must be sufficient to put the defendant on notice of the claim prior to the expiration of the prescriptive period. In the instant case, the motion filed by Adams made no mention of any "loans" because Adams only considered the Registry Deposit a loan 6 years later, when it became convenient for him to do so in connection with the Maison Royale, LLC ("Maison Royale" or "Debtor") bankruptcy case, and because the alleged borrower was not even a party of the action in which the motion was filed. Under these circumstances, it was clear err to conclude that the motion interrupted prescription.

2.  The lower courts erred in determining that the stay order issued by the state court of appeals suspended the running of prescription on Mr. Adams' action to recover the alleged loan of the $775,246.00 held in the registry of the state court, as the stay order did not stop Adams from filing a collection lawsuit or any other action to obtain an adjudication on his alleged loan(s).

3. The lower courts committed clear error in characterizing the alleged transactions as loans, rather than equity contributions. The transactions could not have been any less "arms-length." As the lower courts conceded, the loans were not evidenced by notes, any loan documents or any

formalities. Mr. Adams, the "lender," was a conflicted fiduciary in control of the Debtor, the "borrower," and dictated the value of his in-kind, consignment loans. The Registry Deposit "loan" was made after the Debtor was defunct, without any ability to repay the loan because Mr. Adams had gutted the company pursuant to a fire sale of all assets in violation of a state court injunction. Adams' loans involve a classic after-the-fact attempt by a shareholder to elevate the priority of what was at best an equity contribution.

4. The District Court erred in not addressing, much less reversing, the Bankruptcy Court's conclusion that the Debtor owed Mr. Adams any amount in light of the uncontroverted expert testimony of Dennis Tizzard. Mr. Tizzard testified that the Debtor overpaid Mr. Adams, and that Mr. Adams manipulated the books and records of the Debtor to inflate the amount of his alleged "consigned loans" and liquidate the inventory of the Debtor in violation of the state court injunction. The lower courts failed to even examine whether Adams satisfied his burden of proving that the loan funds were actually extended. The lower courts' rulings should be reversed and Adams' loan claims disallowed.

# STATEMENT OF THE CASE

## A.    Procedural Background

The underlying bankruptcy case involves a two-party dispute between Jack Adams and Rick M. Sutton, the 50/50 owners of the debtor, Maison Royale, LLC ("Maison Royale" or "Debtor"). ROA 24278. Although the Debtor had not operated since 2015, in 2023 Mr. Adams commenced the Bankruptcy Case on behalf of the Debtor. ROA 24280. Mr. Sutton did not authorize the bankruptcy filing. ROA 24281. Hence, Mr. Sutton immediately moved to dismiss the Bankruptcy Case based on the lack of authority and bad faith. *Id.* The inappropriate or bad faith nature of the filing is evidenced by, among other things, the timing of the filing – 8 years after the company ceased operations[1] and within a few months decisions by the Supreme Court of Louisiana, which reversed lower court decisions dismissing Mr. Sutton's claims and paved the way for the litigation to proceed to trial.[2] Mr. Adams filed the Bankruptcy Case

---

[1] The company filed its final tax return showing no liabilities in 2016, ROA 23076, and stopped filing annual reports with the Secretary of State in 2016. ROA 23225.

[2] *Sutton v. Adams and Maison Royale, LLC*, No. 2022-C-01673, 356 So.3d 1005 (La. 3/7/2023); *Sutton, individually and derivatively on Behalf of Rjano Holdings, Inc. and Maison Royale, LLC v. Adams, Maison Royale, LLC and Rjano, Inc.*, No. 2022-C-01674, Nos. 2022-C-1672 & 2022-C-1677, 356 So.3d 1030, 1035-37 (La. 3/72023); *Sutton, individually and derivatively on Behalf of Rjano Holdings, Inc. and Maison Royale, LLC v. Adams, Maison Royale, LLC and Rjano, Inc.*, No. 2022-C-01677, Nos. 2022-C-1674 & 2022-C-1672, 356 So.3d 1038, 1045-47 (La. 3/7/2023) (collectively referred to as the "Louisiana Supreme Court Rulings").

as a last ditch effort to derail trial of the ownership dispute. Obviously, use of bankruptcy as a litigation tactic to delay a two party decision constitutes the quintessential example of a bad faith bankruptcy filing.

The Bankruptcy Court concluded that the Debtor had authority to file, but the decision was not based on a ruling as to substantive ownership. ROA 24281. Instead, the Bankruptcy Court judicially estopped Mr. Sutton from challenging the existence of a third owner, a company wholly owned by Mr. Adams, and, therefore, the Bankruptcy Court concluded that Mr. Adams and his wholly owned company held the majority of the voting interests and could authorize the bankruptcy filing. *Id.* The Bankruptcy Court decision was erroneous for a variety of reasons, including that even if judicial estoppel were applicable, which it is not, under Louisiana law Mr. Adams could only grant his wholly owned company an economic interest in the Debtor. He could not unilaterally give the company management or voting rights without Mr. Sutton's consent, which the parties agree was never provided. Mr. Sutton appealed the authority issue, but it was denied as a premature, interlocutory decision. ROA 124. Mr. Sutton intends to pursue the appeal, if necessary, once the Bankruptcy Case is closed and the order regarding authority becomes a final appealable order.

This appeal involves objections filed by Appellant and Wilbur J. "Bill" Babin, in his capacity as Chapter 7 Trustee, to Proof of Claim No. 4 filed by Jack Adams

against the Debtor. ROA 24274-24276. Although this claim objection is a separate contested matter from the motion to dismiss litigation, the matters are closely related. The Debtor's primary asset is the $775,246 Registry Deposit that Mr. Adams contends he loaned to the company in 2017. ROA 24280. Had Adams withdrawn the $775,246 when he had the chance, his loan balance would have been reduced, and there would have been no need for his proof of claim. He also could have filed a petition for open account or monies loaned seeking a judgment for the alleged loan balance. He chose not to.

Adams' peculiar decision to forego his rights was actually part of a carefully calculated scheme, summarized as follows:

Step one: Rather than withdrawing the $775,246, use it to fund the bankruptcy case, thereby staying the state court litigation that was ready to proceed to trial in light of the Louisiana Supreme Court's March 2023 rulings against Adams.

Step two: Notwithstanding that the company has few, if any, creditors other than Sutton and has been defunct for years, file this case as a chapter 11 reorganization rather than a chapter 7 liquidation to avoid a trustee and maintain control of the Debtor, including hiring counsel decisions and controlling the company's "reorganization process" (i.e., the company's litigation against

himself). This step ultimately failed. The case was converted to chapter 7 and a trustee took control.

Step three: Remove the state court litigation to federal court.

Step four: Recharacterize his alleged consignment and cash contributions as loans to try to gain an unsecured creditor / non-equity stake in the $775,246 deposit.

Step five: Once his proof of claim is allowed in an amount in excess of the balance of the $775,246, attempt to acquire derivative claims against him from the Trustee for a nominal sum, and argue that the only other interested party, 50% owner Rick Sutton, has no standing because the company is insolvent, there is no surplus for equity owners and they therefore have no stake in the case. Adams' true intent, of course, has nothing to do with maximizing recovery for creditors or equity, but rather is an attempt to manufacture a back-door settlement or acquisition of derivative claims against himself.

The final step of Adams' plan depends entirely on this appeal. If Adams loses, then general unsecured creditors (Sutton, Adams and Adams' attorney) will be paid in full and the Trustee will close the case and abandon the litigation as unnecessary to pay creditors. If Adams prevails, then general unsecured creditors will not be paid in full and there will be a fight should the Trustee

attempt to sell the litigation to Adams to generate money for general unpaid unsecured creditors.

Adams' chicanery should not be tolerated. The solution is to deny his claim for $775,246. If he is actually owed the loans as he alleges, he will have his day in state court to prove it, the same venue where this dispute began over 10 years ago.

## B.    Factual Background

Adams and Sutton formed the Debtor as 50/50 members in 2011. ROA 24278. Prior to its formation, Sutton owned and operated a business that sold fine art and jewelry at a store located in the French Quarter at 501 Royal Street, New Orleans, Louisiana. Sutton's family, third generation merchants of fine art in New Orleans, owned and operated the store at 501 Royal Street for decades prior to 2011. In 2011, Adams (a New York resident at the time) attended Jazz Fest in New Orleans and stayed with Rick Sutton. During this time, Adams learned about Sutton's store and ultimately expressed interest in a partnership with Sutton. To effectuate the partnership, in the summer of 2011, Adams and Sutton formed RJANO Holdings, Inc. The partners agreed to name the shop at 501 Royal Street "Maison Royale." The partners agreed that Sutton would manage the business and Adams would supervise marketing, advertising and provide financial oversight.  In October 2011, the Debtor entity, Maison Royale,

10

LLC, was formed as the successor to RJANO Holdings, Inc. and to act as the operating company.

A partnership dispute erupted early in the relationship, and multiple lawsuits were filed in state court beginning in 2014. The state court granted Sutton control of the business in 2017. More recently, Sutton was on the verge of finally concluding the state court litigation when Adams improperly commenced the underlying bankruptcy case on behalf of Maison Royale. The bankruptcy filing was an obvious attempt to wrongfully stop Sutton's momentum and the inevitable adverse judgment that will be entered against Adams, evidenced by the fact that there are virtually no creditors, that Maison Royale has not been an operating business for almost ten years and that hundreds of thousands of dollars have been wasted on bankruptcy administrative expenses with no benefit to any creditors.

At the outset of the initial state court action, the state district court ruled that although it was unclear "what sums of money each partner put into the business," "Mr. Adams' actions" in barring Sutton from the business "violate the law" regarding a partner exercising his rights to inform himself about the business activities and reviewing the books and records. The court enjoined Adams from preventing "Rick M. Sitton, Individually and Derivatively on behalf of RJANO Holdings, Inc. and Maison Royale, LLC" access to the

business because Sutton was a "partner" or owner of the Debtor. ROA 23052-23054.

Despite this judgment, in November 2016, defendant, Mr. Adams unilaterally emptied out all of merchandise from the leased premises/store, closed the store, and terminated all by two employees. Mr. Adams does not deny that he did this. ROA 23245-23246, 23054.

Adams testified that he unilaterally conducted the fire sale based on his mental and emotional problems, not the best interests of the company. ROA 23245-23246. As a result, in April 2017, the state court found Adams to be in contempt and directed that Adams "deposit all proceeds from the sale or inventory into the registry of this court where they will remain until the court determines the ownership of these funds. According to Mr. Adams' CPA, the total proceeds are $775,246.00." ROA 23054. Despite the fact that the state court directed that Adams personally deposit the funds into the registry and reserved a ruling on who owned the funds, Adams now contends that the Registry Funds were actually a loan by him to Maison Royale.

The evidence (or lack thereof) presented to the Bankruptcy Court established that even if the Claim No. 4 transactions are characterized as loans, Mr. Adams' claims prescribed long before the filing of this bankruptcy case. Adams has employed a legion of lawyers for a decade and had plenty of time to

file suit, but the evidence reveals that he never really considered the transactions to be loans until he filed this bankruptcy case. By that time, it was too late. The claims had prescribed.

Adams also failed to rebut the evidence that the amounts identified in Proof of Claim No. 4 were either Mr. Adams' personal expenses or capital contributions, not loans to Maison Royale. The transactions could not be any less "arms-length." Mr. Adams contends that he is the sole manager and 100% owner (along with his wholly owned company) of Maison Royale. He dictated to whom the "loans" were paid and when and how much was repaid. The "loans" are not evidenced by any notes or formal loan documents. ROA 22967. The financial situation of the Debtor rendered insider loans totally inappropriate, as the majority of the transfers by Adams were made after the company ceased operations, filed its final tax return, and had its articles of organization revoked by the State of Louisiana. Claim No. 4 involves a classic after-the-fact attempt by a shareholder to elevate a capital contribution to debt.

The lower courts misapplied the law regarding acknowledgment for purposes of interrupting prescription and the effect of the state court of appeals' stay, and the court glossed over the absence of any facts establishing acknowledgment or even the existence of the loans claimed by Mr. Adams. As

a result, the ruling should be reversed with instructions to deny Mr. Adams'
Claim No. 4 in its entirety.

## SUMMARY OF THE ARGUMENT

Actions to recover loans are subject to Louisiana's three year prescriptive
period. La. C.C. Art. 3494(3) (actions on "money lent" are "subject to a liberative
prescription period of three years"). Adams deposited the funds (or made the loan)
on June 9, 2017. Consequently, Adams' claims for loan repayment prescribed no
later than June 9, 2020. Adams never filed a lawsuit to collect the loan or any other
lawsuit against Maison Royale. The bankruptcy case was not filed until 2023, so it
was too late to interrupt prescription.

Adams first characterized his transactions as loans and began to pursue them
only after the bankruptcy filing as a litigation tactic to derail state court litigation
between Messrs. Adams and Sutton. Adams failed to provide a shred of evidence,
other than his word which has been impugned in court on multiple occasions, that
his transactions with Maison Royale were meant to be loans. Mr. Adams' failed to
satisfy his burden of proof that his claim was not an equity contribution to the Debtor
or that he was owed anything from the Debtor, irrespective of whether his
transactions were equity contributions or loans.

For these reasons, Mr. Adams' claim for $775,246 should be disallowed,
which will enable the closing of the bankruptcy case expeditiously.

# ARGUMENT

## A. Adams' Claim for Repayment of the Alleged Loan of $775,246 should have been Disallowed as Prescribed.

### i. Adams' Loan for the Registry Deposit prescribed no later than June 9, 2020.

Adams contends he loaned Maison Royale $775,246 to comply with the state court's order that he deposit those funds into the court's registry. Louisiana's three year prescriptive period governs his claim to recover his loan. La. C.C. Art. 3494(3) (action on money lent subject to three year prescriptive period).

Adams deposited the Registry Funds no later than June 9, 2017. Adams never filed a lawsuit against Maison Royale to collect the Registry Funds. In fact, Adams never filed any lawsuit, counterclaim, cross-claim or third-party demand against Maison Royale to collect a loan or for any other reason. Consequently, the prescriptive period expired June 9, 2020.

The lower courts, however, concluded that the prescriptive period had been interrupted and suspended through the date of the bankruptcy filing. To reach this result, the lower courts had to thread the head of multiple needles.

First, the lower courts concluded that the November 7, 2019 filing by Adams of an *Ex Parte Motion and Incorporated Memorandum to Release Funds from Court*

15

*Registry to Jack Adams* (the "Ex Parte Motion to Release Registry Funds"), coupled with Maison Royale's "decision not to challenge the motion" through January 30, 2020, when the state court entered an order releasing the funds, constituted "tacit acknowledgement" of the validity of the Adams' loans. The Bankruptcy Court recognized that, at most, this would extend prescription to only January 30, 2023. ROA 22977. The bankruptcy case was filed later, on June 20, 2023. To get around this gap between January – June, 2023, the Bankruptcy Court used the Louisiana Fourth Circuit Court of Appeals' stay of the Adams and Sutton litigation to justify application of *contra non valentem* and the suspension of the prescriptive period.

If the bankruptcy court erred in its application of either the tacit acknowledgement or *contra non valentem* doctrines, then the alleged loan prescribed.

For the reasons detailed below, the lower courts' finding of acknowledgment was manifestly erroneous and contrary to the evidence and its holding that the Fourth Circuit stay suspended the prescriptive period under the *contra non valentem* doctrine was erroneous as a matter of law.

### ii. Adams failed to satisfy his burden of proving interruption prior to expiration of the prescriptive period.

Allowance of claims in bankruptcy is governed by 11 U.S.C. § 502. Section 502(a) provides that a filed proof of claim is allowed unless a party-in-interest

objects. Once an objection is filed, the claim must be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ." 11 U.S.C. § 502(b)(1). Upon the filing of an objection, the burden shifts to the claimant to prove that it holds a valid and enforceable claim. ROA 22965.

In addition to proving the validity and enforceability of his claim, Adams bears the burden of proving that interruption of prescription occurred. *Whitney Nat. 'l Bank v. Demarest*, 947 F.2d 182, 186 (5th Cir. 1991) *citing Chauser v. Babin*, 412 So.2d 1005, 1007 (La. 1982); *Bahr v. Wood*, 507 So.2d 4, 5-6 (La. App. 2d Cir. 1987). In *Demarest*, the Court explained:

> . . . acknowledgment interrupting prescription requires no specific form. Acknowledgment "may be made verbally, in writing, by partial payment, by payment of interest, by pledge, or in other ways. It may be tacit or implicit, or inferred from the facts and circumstances." *Lake Providence Equip. Co. v. Tallulah Prod. Credit Ass'n*, 257 La. 104, 241 So.2d 506, 509 (1970); *see also Flowers v. U.S. Fidelity & Guar. Co.*, 381 So.2d 378, 382 (La.1979). However, while acknowledgment may take many forms, "[t]o interrupt prescription, an acknowledgment must be made with the intention to interrupt prescription." *Bahr*, 507 So.2d at 5; *Richard Guthrie & Assocs. v. Stone*, 562 So.2d 1071, 1072 (La.App.4th Cir.), *writ denied*, 567 So.2d 107 (La.1990); *Autin v. Parish of LaFourche*, 423 So.2d 98, 100 (La.App.1st Cir.1982); *Emery v. Cabral*, 400 So.2d 340 (La.App.4th Cir.) ("acknowledgment must be accompanied by or coupled with a clear declaration of intent to interrupt the prescription then running"), *writ denied*, 405 So.2d 533 (La.1981). The burden of proving that prescription has been interrupted rests with the party seeking to prove the interruption. *Bahr*, 507 So.2d at 5. **Proof of interruption of**

17

> prescription must be **"<u>clear, specific and positive</u>."** *Landry v. Guidry*, 210 La. 194, 26 So.2d 695, 697 (1946); *Gibson Greeting Cards, Inc. v. Cabibi*, 237 So.2d 897, 898 (La.App.4th Cir.1970).

*Demarest*, 947 F.2d at 186 (emphasis added).

Proving the applicability of multiple exceptions to prescription, at different periods of time, was a prerequisite to survival of Adams' claim. If Adams failed to carry the burden with regard to any of the exceptions, then his claim for the Registry Funds loan must be denied.

### iii. *Adams failed to present any evidence to establish "acknowledgment" by Maison Royale, much less "clear, specific and positive" proof as the law requires.*

Adams failed to offer documentation evidencing acknowledgment by Maison Royale. ROA 22967. The Bankruptcy Court relied on Mr. Adams' testimony "that Maison Royale 'maintained 'continuous and frequent contact with [Mr. Adams] throughout the prescriptive period' and effectively 'lull[ed] Adams into believing [it would] not contest liability.'"" ROA 22974-22975.

Juridical entities like Maison Royale act through individuals. During the pertinent time period (2017 – 2023), Mr. Adams was the sole manager of the company. Hence, the Court essentially concluded that Mr. Adams, as the individual representative of Maison Royale, lulled himself into believing that he would not contest his own loan claim. How can a competing creditor or trustee defend against

acknowledgment under this standard? Permitting a conflicted member of a company to validate his dealings by simply saying so flies in the face of basic rules of corporate governance.

Adams and the lower courts failed to find a single case involving acknowledgment of validity of the debt when the creditor and debtor are the same person. Here, the conflict is exacerbated by Adams engaging the same law firm to advise both himself and Maison Royale regarding their respective rights. The Maison Royale estate does not stand a chance vis-à-vis Mr. Adams in challenging tacit acknowledgement.

Even if the obvious conflict of interest can be overcome in proving the efficacy of dealings between Maison Royale and Adams, the evidence established that Maison Royale did not have the capacity to acknowledge anything. Maison Royale ceased operations in 2015, and Mr. Adams conducted a fire sale (in violation of the state court's injunction) of all of the company's assets. Maison Royale filed its 2015 tax return as a "Final Return" and has not filed any returns since 2015. ROA 23177-23221.  The Louisiana Secretary of State revoked the company's Articles of Organization effective February, 2019. ROA 23222-23227.  Maison Royale simply did not have the ability to "lull" or do anything else after 2015.

Again, the Bankruptcy Court basically relied on Mr. Adams saying that Maison Royale, through him as its representative, acknowledged his debt. Just as

troubling as the Courts' willingness to accept Adams' self-serving statements, the Court did not consider Adams' past credibility issues.

The state court addressed Adams' veracity on multiple occasions. The district court concluded that during his testimony, Adams made admissions of fraud and then invoked the Fifth Amendment when questioned further about fraudulent acts. The court explained the trial testimony as follows:

> In this proceeding, and having heard the extensive testimony of Mr. Adams, including the invocation of his Fifth Amendment rights, this Court determined that Mr. Adams had little to no credibility whatsoever. Additionally, the limited documents relied upon in the RICO case, particularly the stock certificate and the related testimony during the Writ of Quo Warranto proceeding, were determined by this Court to be of little to no value. Even further, the facts presented during the Writ of Quo Warranto proceeding established Mr. Sutton put $57,000.00 of his own cash into the business, worked a full year without compensation, and brought his expertise in the field of fine art to the betterment of the business.

ROA 23039-23040; *Sutton*, 356 So.3d at 145-46.

In a separate proceeding, the state court concluded that "Jack Adams is not a credible witness and this Court gives little, if any, weight to his testimony." ROA 23043. The Louisiana Supreme Court adopted these findings in reversing a pretrial decision on the ownership issues.[3]

---

[3] *Sutton v. Adams and Maison Royale, LLC*, No. 2022-C-01673, 356 So.3d 1005 (La. 3/7/2023); *Sutton, individually and derivatively on Behalf of Rjano Holdings, Inc. and Maison Royale, LLC v. Adams, Maison Royale, LLC and Rjano, Inc.*, No. 2022-C-01674, Nos. 2022-C-1672 & 2022-C-1677, 356 So.3d 1030, 1035-37 (La. 3/72023); *Sutton, individually and derivatively on Behalf of*

Adams' penchant for untruthfulness has been on display again in this bankruptcy case. He offered his Schedule C (Form 1040) filed with the IRS for 2017-2020. ROA 6069-6078. The documents were apparently offered to show that both his portion and the Debtor's portion of legal fees were taken as deductions against his personal income. A Schedule C may only be filed by a "Sole Proprietor." The IRS instructions reflect that the Schedule C form should be filed when a taxpayer is "the sole member of a domestic LLC, … unless you have elected to treat the domestic LLC as a corporation."[4] Hence, by filing Schedule C forms with the IRS for multiple years, Mr. Adams attested under the penalty of perjury that he was the "sole proprietor" / "sole member" of Maison Royale. Yet, at the outset of this case, Adams swore under penalty of perjury that he owned only 99% of Maison Royale and that Polly Point Imports Corporation owned the other 1%.[5] The Bankruptcy Court relied on Adams' earlier statements (without the benefit of Adams' Schedule

---

*Rjano Holdings, Inc. and Maison Royale, LLC v. Adams, Maison Royale, LLC and Rjano, Inc.*, No. 2022-C-01677, Nos. 2022-C-1674 & 2022-C-1672, 356 So.3d 1038, 1045-47 (La. 3/7/2023).

[4] https://www.irs.gov/pub/irs-pdf/i1040sc.pdf (page C-2).

[5] *See, e.g.*, *Declaration of Jack Adams in Support of the Debtor's Opposition to Emergency Motion to Dismiss Case* filed at Dkt. # 39-9 of the Debtor's main bankruptcy case ("Jack Adams makes this declaration under 28 U.S.C. §1746: … Polly Point Imports Corporation … is also a member of the Debtor."). ***Mr. Adams did not produce the Schedule C documents at the time of the hearing on authority to file this case. He first produced them later, in connection with the claim objection hearing.***

C's) in concluding that Polly Point was a member of the Debtor, and had a vote on whether this bankruptcy case should proceed.[6]

The Bankruptcy Court ignoring Adams' proven lack of credibility constitutes manifest error, especially since the entire acknowledgment defense and existence of his loans depend on his word.

### iv. The Bankruptcy Court's determinations that Maison Royale "was a party" to Adams' Ex Parte Motion to Release Funds and that Maison Royale decided "not to challenge the motion at any time" were wrong.

In addition to ignoring the fact that Maison Royale could not challenge Adams' Ex Parte Motion to Release Funds because it was hopelessly conflicted, the bankruptcy court erred in essentially finding that Maison Royale acknowledged the loan based on the fact that "Maison Royale was a party to that litigation" and decided "not to challenge the motion at any time." ROA 22976-22977.

The jurisprudence makes clear that the circumstances here cannot constitute acknowledgment. "Offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments." *Gordon v. Gordon*, 16-0008, (La.App. 4 Cir. 6/8/16), 195 So. 3d 687, 690 (*quoting Lima v. Schmidt*, 595 So. 2d 624, 634 (La. 1992)). Settlement negotiations do not

---

[6] Mr. Adams testified at the hearing that Polly Point had not made any loans to the Debtor. ROA 23243. This may explain why he took the position with the IRS that he owns 100% ownership – Polly Point had no tax basis to use to offset expenses. To recoup 100% of the deductions, Mr. Adams may have had to claim to be 100% owner. Either way, his statements under penalty of perjury to the IRS directly contradict his statements under penalty of perjury to this Court.

evidence an acknowledgement.'" *Ballanco v. Morvant*, 2023-0526, (La.App. 4 Cir. 1/17/24); 382 So.3d 411, 417 (citing *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, L.L.C.*, 12-1233, (La.App. 4 Cir. 2/27/13), 111 So. 3d 1099, 1105 (quoting *Lima*, 595 So. 2d at 634)). The record reflects that Maison Royale did not acknowledge the Registry Funds loan. Maison Royale could not even know that the deposit was being claimed by Adams as a loan because Adams never referred to it as a loan.

The Bankruptcy Court's finding that Maison Royale was a party and provided notice of Adams' loans in the state court proceeding was inaccurate too. ROA 22976. Although Maison Royale was named as a defendant due to the procedural requirement that the company be a party to the lawsuit (*See* La. C.C.P. Art. 615(3) (plaintiff shall join as defendant the corporation in a derivative action and "[i]nclude a prayer for judgment in favor of the corporation")), substantively its involvement was that of plaintiff asserting claims against its fiduciary, Jack Adams. The motion filed by Adams, however, made no mention of a loan or Maison Royale's alleged obligation to repay any such loan. Maison Royale, as plaintiff, could not have possibly known from the motion that Adams was asserting a claim to collect a loan against it.

Further, on April 26, 2019, the state court dismissed Sutton's claims against and on behalf of Maison Royale. ROA 23055-23056. Accordingly, Maison Royale

was not even a nominal defendant to the litigation during the pertinent time. The Bankruptcy Court erred in concluding that Maison Royale was a party with notice. Because this inaccurate finding was "[c]rucial to [the bankruptcy] court's ruling" on acknowledgment of prescription, the Bankruptcy Court's decision must be reversed and Adams' claim denied as time barred by the applicable prescriptive provision. ROA 22976.

More importantly, the motion was not filed "against" Maison Royale. Prescription is interrupted only if the alleged borrower "commences action against" the lender. La. C.C. Art. 3462 ("prescription is interrupted when the . . . obligee commences action against the obligor. . . ."). Adams failed to present any evidence that the Motion was filed "against" Maison Royale, as it could not have been since Maison Royale had already been dismissed from the action.

Bottom line, neither Adams, Maison Royale nor any other person ever referred to the $775,246 Registry Fund as a loan against Maison Royale until Adams filed this bankruptcy case in bad faith on June 20, 2023. It's impossible to file suit on or acknowledge a loan that doesn't even exist.

For these reasons, the lower courts committed clear error in concluding that Maison Royale acknowledged that the $775,246 was a valid loan or received adequate notice of a collection action by Adams. To the contrary, Maison Royale

could not have known that the Registry Fund was being asserted as a loan until after the June 20, 2023 bankruptcy filing.

**B. The Bankruptcy Court's conclusion that the appellate court's stay order prevented Adams from filing a collection action was clearly erroneous and contrary to the law.**

The Bankruptcy Court, without citing any authority, concluded that the state court of appeals' stay of specific state court actions prevented Adams from commencing a legal action to collect the Registry Funds and therefore applied the *contra non valentem* doctrine.

Louisiana courts have dealt with the effect of stays in the context of prescription. In *Lee v. Champion Ins. Co.*, 591 So.2d 1364 (La. Ct. App. 1991), the plaintiffs filed a UM claim against Champion and LIGA more than two years after the automobile accident. The plaintiffs had received a notice from Champion's liquidator in June, 1989 stating that all claims against Champion had to be filed by July 5, 1990 and that R.S. 22:732 *et seq.* stayed or enjoined the commencement of any action or proceeding against Champion. The plaintiffs filed their suit in March, 1990, and LIGA filed a motion for summary judgment on the grounds that the UM claim was prescribed. The trial court granted the motion; and, the court of appeals affirmed, finding no merit to the plaintiffs' claim that they were restrained from filing suit until July 5, 1990. The LIGA deadline neither prevented the filing of suit nor interrupted or extended prescription.

25

In *White v. Haydel*, 593 So.2d 421 (La. Ct. App. 1991), the plaintiff filed suit against the defendant, who had been insured by Champion, and LIGA more than one year after the accident. LIGA filed an exception of prescription and the plaintiff amended his petition to allege that his claim was not prescribed because the stay issued in conjunction with the liquidation proceedings interrupted and/or suspended prescription for the duration of the order. The trial court granted the exception. The First Circuit affirmed, holding that the stay applied only to pending actions.

Here, similar to the *White* case, the stay only stopped the lawsuits identified in the stay order from continuing to proceed. None of these lawsuits involved a complaint by Adams to recover loans from Maison Royale. Nothing in the stay order prevented Adams from suing Maison Royale for amounts due, loan balance or any other reason. The stay did not stop Adams from filing a collection action against Maison Royale, so he is bound by the three year prescriptive period without suspension.

## C.    Adams failed to satisfy his burden of proof as to the validity of his loan claims.

### i. *The Court's finding that the Adams' transactions were loans, rather than equity contributions, was clearly erroneous.*

The evidence established that the transactions Adams characterized as "loans" after the bankruptcy filing were actually equity contributions. The Registry Deposit was never referred to as a "loan" until after Adams filed this bankruptcy case.

Indeed, Adams characterized the funds as inventory liquidation proceeds in the bankruptcy schedules he filed for the Debtor. ROA 50.

In analyzing debt versus equity issues, courts may consider what are commonly referred to as the Roth Steel Factors:[7]

> 1. names given to the instruments, if any, evidencing the indebtedness;
> 2. presence or absence of a fixed maturity date and schedule of payments;
> 3. presence or absence of a fixed rate of interest and interest payments;
> 4. source of repayment;
> 5. adequacy or inadequacy of capitalization;
> 6. identity of interests between the creditor and stockholders;
> 7. security, if any, for the advances;
> 8. corporation's ability to obtain financing from outside lending institutions;
> 9. extent to which the advances were subordinated to the claims of outside creditors;
> 10. extent to which the advances were used to acquire capital assets; and
> 11. presence or absence of a sinking fund to provide repayment.[8]

The Roth Steel factors evidence that Adams' payments were either payment of Adams' own, separate obligations or equity contributions to the Debtor.

The factors generally relate to the existence or lack of corporate formalities and the substance of the transactions. The alleged loans were not documented in writing, much less via formal notes or instruments. In fact, there is no evidence of direct payments to Maison Royale. The $202,000 balance (denied by the Bankruptcy

---

[7] *See Capital Contribution or A Loan?*, 21 AM. BANKR. INST. J. 1, 42 (June 2002) (cites omitted).
[8] *Id.* at 42-43.

Court on the grounds of prescription) in "Net Cash Out of Packet Loss" arose primarily out of consignment loans pursuant to which Adams contributed jewelry and other inventory to the Maison Royale. There were no checks to Maison Royale. These consignment loans were not actual cash loans. The funding consisted of assets contributed by Adams to the Debtor. Adams unilaterally valued the assets and had such value used as the amount of his loan. Adams never provided any documentation to substantiate the value of assets. These consignment transactions were insider deals, conducted by a directed / member who was clearly conflicted.

The final tax return reflects that the company had $0 liabilities when it was shut down in 2016. ROA 23076. Adams testified: "[W]ell, this is the year that we closed the store. And it was explained to me that this is just how it's done." ROA 23244. Adams expert Harold Asher testified that the $0 liability "means that those liabilities have been distributed in liquidation to the owners." Their argument proves too much. Adams essentially assumed (or received via distribution) the company's liabilities, which extinguished the liabilities by merger (Adams both the creditor and debtor) and then he deducted the "distributed liabilities" as losses for tax purposes. He cannot now seek to reverse the transaction, having already received the tax benefits of the distribution.

There was no maturity date or schedule of payments. There was no interest rate.[9] Some of the "loans" occurred after the Debtor ceased operations, meaning that Mr. Adams could have no expectation of repayment. Mr. Adams characterized loans as his "operating losses." There was no collateral. Mr. Adams acknowledged that his claims were subordinate to creditors.ROA23247.[10]

The Bankruptcy Court ignored the corporate formalities. "The court placed no import whatsoever upon the lack of a promissory note or other debtor/creditor formalities." ROA 22967. "Placing no import on" or ignoring the nature of the transaction constitutes clear error.

The Bankruptcy and District Court framed the issue as "recharacterization," and concluded that Louisiana courts have not adopted federal jurisprudence on recharacterization. This approach is too superficial. The factors established by the federal courts may not be dispositive, but certainly provide guidance for analyzing the nature of Adams' transaction with Maison Royale. The substance of the transaction should govern over form. To allow an owner to unilaterally characterize payments to as a loan to the prejudice of other creditors just because the owner later

---

[9] Dennis Tizzard noted as part of his forensic analysis that Maison Royale did pay loan interest on a line of credit from Wells Fargo and that this may have been a personal line of credit that Jack Adams was obligated to pay. ROA 23274-23275.

[10] Mr. Adams conceded that he used insurance proceeds to pay himself, rather than using the proceeds to repair damage giving rise to the insurance claim, which constitutes another breach of his fiduciary duties as manager of the Debtor.

says that is what he intended is violative of his fiduciary duties and common sense. Accepting Mr. Adams' characterization without analysis simply because there does not appear to be any Louisiana cases adopting the federal jurisprudence on recharacterization effectively strips creditors of basic expectations of corporate governance. The lower courts' rulings should be overruled because the transactions between Adams and Maison Royale were clearly in the nature of equity contributions, not loans.

Mr. Adams' control over the loans and the company not only implicates the above factors, but also underlies the unfairness of treating Adams' claims *pari-passu* with legitimate creditors. For example, when Adams unilaterally and surreptitiously liquidated and closed Maison Royale, he destroyed a profitable company whose finances were improving. ROA 23271-23273. He liquidated based on his mental and emotional problems, not the best interests of the company. ROA 23245-23246.[11] He admitted that he took goods at cost, meaning the company did not profit on his forced transfer. Yet, he expects to be repaid the full amount of his contributions as if he were a creditor, irrespective that genuine creditors were not allowed to participate in deciding whether to liquidate and, if they had been, they would not have allowed

---

[11] Adams stated that liquidation was also because "we were not making money," but this is disproven by the tax returns and the expert testimony.

Adams to torpedo the business simply because Adams was unwilling to participate in future operations.

For these reasons, Adams' Proof of Claim No. 4, including the $815,191.15 portion allowed by the Bankruptcy Court, were not loans. Adams' claim must therefore be denied in its entirety.

### ii. The uncontroverted evidence established that Adams vastly overstated the amounts he loaned or contributed to Maison Royale.

The evidence offered by Adams to support his loan balance consisted of only one document, a QuickBooks Transaction Detail [ROA 23060-23062] admitted at the claim objection hearing, and Mr. Adams' testimony. ROA 22981-22982.

The Details was printed from QuickBooks on June 11, 2018. ROA 23241-23242. The document shows the credits and debits for Adams' "Net Cash Out of Pocket Loss (Loan)".

Importantly, although printed on June 11, 2018, more than a year after the state Adams deposited the Registry, the accounting record makes no mention of the Registry Fund as a loan or otherwise. Again, Mr. Adams wants the Court to rely on Maison Royale's books and records when it suits him, yet ignore glaring omissions and discrepancies that undermine his allegation that he loaned the company monies.

For sake of argument, assuming the transactions listed on the QuickBooks detail were loans, the evidence established that the Debtor significantly overpaid Mr. Adams.

The Bankruptcy Court accepted Dennis Tizzard as an expert in forensic accounting. ROA 23251. Mr. Tizzard performed a forensic analysis of Maison Royale's accounting and financial documents, with an emphasis on verifying whether the QuickBooks Transaction Detail was accurate. ROA 23250.

Mr. Tizzard explained that the credits to Mr. Adams' various loan accounts included amounts for goods consigned by Adams to Maison Royale. When Maison Royale sold a consigned good ("memo sales, or consigned sales"), ROA 23252, Mr. Adams would determine how much he was owed. ROA 23252-23253. Mr. Tizzard analyzed whether there was any support for the loan amounts reflected in the QuickBooks report. ROA 23256.

Based on his review, Mr. Tizzard concluded that Maison Royale repaid Adams $2,211,791.31. ROA 23259. He opined that Maison Royale overpaid Adams, summarized as follows:

| | | |
|---|---|---|
| Adams Claim | $202,866.00 | |
| Loans with No Documentation | ($819,585.00) | ROA 23261-23262 |
| EDGE Reports with No Support | ($225,859.72) | ROA 23262-23264 |

| | |
|---|---|
| EDGE Report Cost Exceeds Adams' Docs. | ($15,881.55) ROA 23264 – 23266 |
| Double Reimbursement for Loan | ($26,500.00) ROA 23267 |
| **Adams Overpayment / Due to Maison Royale on Loan Accounts** | **($884,960.27)** ROA 23281-23283. |

In addition, Mr. Tizzard testified that the company repaid Mr. Adams $252,830 and $190,363 (total of $443,193) with no supporting documentation. Based on Mr. Tizzard's review of the company's QuickBooks' Audit Trail, the company adjusted its books in 2017 (after it ceased operating) to reflect that the payments to Adams were for attorneys' fees. ROA 23275,23278. Mr. Adams testified that he had no reason to believe that Mr. Tizzard's analysis was inaccurate. ROA 23289. No documentation was provided to substantiate that these payments to Adams covered loans for attorney's fees incurred by the company. ROA 23285-23286. Mr. Adams had a limited recollection of the fees, but recalled that the attorneys represented himself, his father, Polly Point and Rjano. ROA 23285-23286.

Mr. Tizzard also identified 9 loan repayments to Adams totaling $96,500. The payments appeared to reimburse Adams for payments to Sinai Izzarian, but they were identified in the accounting documents as payment for "inventory purchased." ROA 23279. Mr. Tizzard was unable to track any inventory that was purchased in connection with the loan repayments or that the Debtor received any value in exchange for these $96,500 payments to Adams. ROA 23279-23280.

**After accounting for the unsubstantiated attorney fees and valueless Izzarian payments, Maison Royale overpaid Adams $1,424,653.27 on his Net Cash of Pocket Loss.**

Note too that the foregoing assumes that the numbers provided by Adams for the company's inventory system (EDGE Reports) were accurate. This assumption is questionable, at best. Mr. Adams never provided Mr. Tizzard with copies of original invoices with the cost or amount Adams actually paid for the consigned goods. ROA 23269.  Mr. Adams failed to satisfy his burden of proof regarding the amount of the consignment loans. The Court cannot determine what amount, if any, Adams loaned to Maison Royale.

Mr. Tizzard's opinion was uncontroverted. Mr. Adams' expert, Harold Asher, testified that he did not determine whether Adams' transactions were loans or capital contributions. ROA 23291.  Instead, he relied on whatever Jack Adams provided to the bookkeeper to put into the company's QuickBooks. ROA 23292.  Mr. Asher did not even know the name of the inventory program that Maison Royale used to record consignment loans. ROA 23292.

In essence, Mr. Asher acted as a glorified calculator. He accepted the documents presented to him by Mr. Adams without auditing or verifying the amounts. ROA 23293.  This is especially problematic here because the loan amounts were not cash payments. Adams consigned goods to Maison Royale and, after the

fact, assigned a value to the goods and treated that value as loans. Mr. Tizzard requested the original invoices, but he was stonewalled. Asher either ignored the invoices or never received them from Adams.[12]

The Bankruptcy Court set forth its entire analysis of Adams' alleged loan balance in one paragraph. ROA 22981-22982. The Court conceded that Adams failed to meet his burden proof, but gave him the benefit of the doubt.

> This court acknowledges that this aspect of Mr. Adams' Claim is far from bullet proof. But forced to make a call, the court finds that the claim of $202,866 was valid as of the dates of the inventory liquidation/payment to Mr. Adams in late 2016. ROA 22982.

The Bankruptcy Court essentially found that the evidence was balanced. When the evidence is balances or "far from bullet proof," and the court is therefore "forced to make a call," the party bearing the burden of proof loses as a matter of law. *See Liberty Mut. Ins. Co. v. Hera GmbH & Co. KG*, 07-21944-CIV, 2009 WL 10668608, at *8 (S.D. Fla. Nov. 30, 2009) ("When evidence is balanced, the court must rule against the party bearing the burden of proof. If the evidence is "evenly balanced" and "really in equipoise, nothing is established" and the plaintiff has not met its burden.") (*citing Franklin Life Ins. Co. v. Heitchew*, 146 F.2d 71, 75 (5th Cir.

---

[12] On the eve of trial, counsel for Adams notified that Mr. Asher would be unavailable and they intended to perpetuate his testimony. Undersigned counsel was given 24 hours notice, but he had a prior conflict and was unable to participate in the deposition. Hence, Mr. Asher was allowed to give expert testimony without being cross-examined. The Bankruptcy Court's decision overruling the use of Asher's testimony violates basic notions of due process, should be reversed and Asher's testimony stricken.

1945)). The Bankruptcy erred as a matter of law by essentially shifting the burden of proof on Adams "far from bullet proof" claim to the objectors. This Court should review the burden shifting decision de novo, and reverse the Bankruptcy Court's determination that Adams' loan claim was valid.

Alternatively, even assuming the Bankruptcy Court's claim review is not subject to *de novo* review, it should be reversed as clearly erroneous. Bottom line, Tizzard's uncontroverted analysis revealed inconsistencies and irregularities which, coupled with Adams past misrepresentation, indicating that Adams used Maison Royale as his personal piggybank.

## CONCLUSION

This Court should reverse the Bankruptcy Court's Order and remand with instructions to sustain the Trustee and Mr. Sutton's objections to Claim No. 4 filed by Jack Adams and disallowing Claim No.4 in its entirety.

Respectfully submitted,

**Congeni Law Firm, LLC**

*/s/Leo D. Congeni*
Leo D. Congeni, La. Bar No. 25626
650 Poydras Street, Suite 2750
New Orleans, LA 70130
Telephone: (504) 522-4848
Facsimile:  (504) 910-3055
leo@congenilawfirm.com

and

Robert G. Harvey, Sr., La. Bar No. 18615
600 North Carrollton Avenue
New Orleans, Louisiana 70119
Telephone: (504) 822-2136
Facsimile:  (504) 822-2179
rgharvey@bellsouth.net

*Attorneys for Appellant, Rick M. Sutton*

# CERTIFICATE OF SERVICE

I certify that I filed the foregoing on September 8, 2025, electronically, and that a true and correct copy of the foregoing will be served on counsel of record via the Electronic Case Filing System of the United States Court of Appeals for the Fifth Circuit.

*/s/Leo D. Congeni*
LEO D. CONGENI
*Counsel of Record for Appellant, Rick M. Sutton*

# CERTIFICATE OF COMPLIANCE

I certify this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 9294 words, including the parts of the brief exempted by FED. R. APP. P. 32(f).

I further certify this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, in 14-point Times New Roman.

/s/Leo D. Congeni
LEO D. CONGENI
*Counsel of Record for Appellant, Rick M. Sutton*